IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WILLIAM DECHANT,

      Plaintiff,

v.                                       CASE NO. 1:10-cv-72-MP-GRJ

MICHAEL J ASTRUE, Commissioner
of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits. (Doc. 1).   The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 13 & 18). For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on January 18, 2007, alleging a disability onset date of January 8, 2007, due to Crohn's disease, learning disability, and problems with memory and concentration. (R.43-44.)  Plaintiff's application was denied initially and upon reconsideration.  (R.43-46.)  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on June 5, 2009, and entered an unfavorable decision on July 28, 2009. (R.11-24.)  The Appeals Council denied

Plaintiff's request for review on February 23, 2010 (R.1-3.)  This action followed.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his

residual functional capacity ("RFC"), age, education, and past work) prevent him from

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[15]  The Commissioner may satisfy this burden

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant

has a non-exertional impairment which significantly limits his or her basic work skills or

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

Plaintiff contends that the ALJ erred by not calling a vocational expert in a claim because Plaintiff had a severe mental impairment. The Court will focus its discussion of the record on this issue.

### A.   Personal Background

Plaintiff was 34 years old at the time of the hearing. (R.28.)  He completed

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

eleven grade and then received his GED.  (R.29.)  His past relevant work was as a media store clerk (R.884-85, 874.)  The Plaintiff has not engaged in substantial gainful activity since his application date of January 18, 2007 (R.16.)

## B.  Record Relating to Mental Impairments

Records from Trenton Elementary School disclose Plaintiff had a learning disability associated with mathematics.  (R.199.)

On June 22, 2007, Plaintiff was examined by psychologist Dr. William E. Benet. He was referred to Dr. Benet by the Division of Disability Determinations.  His chief complaint was Crohn's disease and extreme fatigue.  Plaintiff told Dr. Benet he has not worked since 2004 due to chronic pain and fatigue; he reported feeling exhausted most of the time with constant pain in his low back and right abdomen.  (R.307.)  Plaintiff reported feeling depressed about his condition.  He denied any active suicidal ideation, social withdrawal, perceptual disturbances, or loss of interest in activities he once enjoyed.  He denied any history of mental health treatment or manic/hypomanic episodes.  Plaintiff said he would have a day or two full of energy and then chronic depressive episodes due to his Crohn's disease.  Dr. Benet noted that Plaintiff's clinical presentation and mental status examination were suggestive of bipolar mood disorder. (R.308.)

Plaintiff told Dr. Benet that prior to working at the media store in 2004, he held a variety of jobs but could not keep them due to sick days from Crohn's disease.  He reported having "thousands of interests," including computers and music.  (R.308.)  He said on days his Crohn's disease is bad, he watches TV, reads a book and not much else.  On good days, he tries to see his girlfriend, go to a movie, or go to the springs.

(R.309).

During his mental status examination, Plaintiff was alert, healthy-looking and well-nourished.  He was friendly, responsive, cooperative and appropriately dressed and groomed.  He had organized and goal directed thinking.  Plaintiff reported that he had an IQ of 200, photographic memory, and could play "hundreds, thousands" of musical instruments.  Dr. Benet noted that Plaintiff had above average short-term memory and good intermediate memory.  His verbal reasoning was above average, fund of knowledge was average, and general intellectual ability was high-average.  His insight was limited with adequate judgment.  (R.309.)

Plaintiff scored within the borderline range of ability on the Wechsler Memory Scale-III, below his expected level.  Dr. Benet opined that the poor performance might have been due to difficulty attending and concentrating; Plaintiff was possibly hypomanic but performed relatively well on tasks of immediate and delayed recall.  Dr. Benet concluded that Plaintiff had bipolar disorder, possibly bipolar disorder II.  His cognitive functioning was above average.  (R.309.)  His performance on the memory test was questionable.  Dr. Benet opined that Plaintiff "should be able to perform work-related mental tasks involving understanding and memory, but is likely to be moderately to severely limited at times in his ability to perform tasks involving sustained concentration and persistence, social interaction and adaptation due to probable mood disorder."  Dr. Benet diagnosed Plaintiff with bipolar disorder and personality disorder with narcissistic features.  He recommended followup treatment for bipolar disorder. (R.310.)

State agency psychologist Gary Buffone, Ph.D., completed a mental residual functional capacity assessment on June 29, 2007, finding that Plaintiff might have difficulties with tasks involving sustained focus and complex mental demands but remains mentally capable of carrying out simple instructions and tasks as reflected by his activities of daily living.  Dr. Buffone opined that Plaintiff could have problems with prolonged or intense social contact but can interact appropriately on a limited basis. Finally, he concluded that Plaintiff might have difficulties with high stress or demanding task situations and would likely benefit from goal-planning assistance.  (R.320.)   He also noted moderate limitations to Plaintiff's ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek; interact appropriately with the general public; respond appropriately to changes in the work setting; and, set realistic goals or make plans independently of others.  (R.318-19.)  Dr. Buffone also completed a psychiatric review technique on June 29, 2007.  He noted mild restrictions in activities of daily living and moderate limitations on social functioning and maintaining concentration, persistence, and pace.  Dr. Buffone found no episodes of decompensation.  (R.332.)

State agency psychologist Val Bee, Psy.D. completed a psychiatric review technique on October 25, 2007, opining that Plaintiff had mild restrictions on activities of daily living, mild restrictions in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace.  Dr. Bee also noted one or two episodes of decompensation.  (R.375.)  Dr. Bee's mental RFC found moderate

limitations on Plaintiff's ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek, and set realistic goals or make plans independently of others.  Dr. Bee found no significant limitations in all other areas of the mental RFC. (R.379-80.)

On January 12, 2009, Dr. Benet completed a mental RFC assessment of Plaintiff based on his previous examination on June 22, 2007.  Dr. Benet noted mild restrictions on the ability to understand and remember detailed instructions; make simple work-related decisions; interact appropriately with the general public; and travel in unfamiliar places or use public transportation.  Dr Benet concluded that Plaintiff had moderate limitations on his ability to carry out very short and simple instructions; work in coordination with others without being distracted; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers; and set realistic goals or make plans independently.  Dr. Benet found several marked limitations on Plaintiff's abilities to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; sustain an ordinary routine without special supervision; complete a normal workday and workweek; and to respond appropriately to changes in the work setting.  (R.420-22).

## D.    **Hearing Testimony**

Plaintiff's most recent hearing occurred on June 5, 2009.  At the time of the hearing, Plaintiff testified he was 34 years old and completed eleventh grade before getting his GED.  (R.28-29.)  He had not worked since 2004, when he was employed as

a clerk in a retail music store. (R.29.) Prior to that, he worked at two restaurants, each for approximately six months or less. (R.30.) Plaintiff testified that he was going to resign from his job at the music store because of his symptoms but the store closed two weeks before he planned to do that. He said he paid co-workers to do much of his work so he could spend time in the bathroom. (R.39.) He testified that out of a 40 hour workweek, 6 hours would be spent in the bathroom. (R.40.)

Plaintiff testified that he has a driver's license but has not driven in about 1.5 years because of his illness and because his car does not work anymore. (R.31). He testified he has had Crohn's disease his whole life but was not diagnosed until early 2007. (R.31-31.) He said he has persistent fevers a few times a month, lasting 4-5 days each, and that he often passes blood through his stool and urine. (R.32.) Plaintiff testified that he has pain that "comes and goes all the time" because of his Crohn's disease. He also said that he must take at least 1.5 hours to chew a meal in order to avoid a blockage. Plaintiff complained of bouts of nausea and diarrhea, and that his prior employer was displeased with his frequent bathroom visits. (R.33). He said he would have periods where he was incapacitated and periods of remission, but could not estimate a frequency of when these occurred. Plaintiff testified that he is sick most of the time and his medications aren't effective for much other than pain. (R.34.) He stated that during an average month he is incapacitated at least three weeks, during which time he sleeps 12-15 hours and doesn't really get out of bed. (R.38.)

Plaintiff testified he sometimes has difficulty walking because he gets very tired, and can only walk about 10-20 yards at a time. (R.34-35.) Plaintiff testified he can

climb a flight of stairs at a very slow pace using the railing; he tries to get others to help

him lift anything; and bending is "nearly impossible." (35.) Plaintiff said he cannot wear

jeans or use a belt and must wear very loose clothing. (R.35-36.)

Plaintiff testified that he takes Hydrocodone for pain (which makes him "kind of

loopy" and he can't drive while taking it) as well as the steroid Prednisone. He does not

take an antidepressant. (R.36.) Plaintiff is unmarried and lives with his mother. (R.36-

37.) He testified he can vacuum slowly, make pre-prepared foods, and do his own

laundry. He said he has had some instances where he needed assistance putting on

his shoes. (R.37.)

## E.    Findings of the ALJ

The ALJ found that the Plaintiff did not engage in substantial gainful activity

since his application date of January 18, 2007. He found that the Plaintiff had the

following severe impairments: Crohn's disease, a bipolar disorder, and a personality

disorder. The ALJ found that the severe impairments did not meet the Commissioner's

Listings. The ALJ found that Plaintiff has the residual functional capacity to perform the

full range of sedentary work as defined in 20 C.F.R. 416.967(a).[21] In accounting for

Plaintiff's non-exertional limitations, the ALJ found that Plaintiff can, on a sustained

basis, "understand, carry out, and remember simple instructions; respond appropriately

---

[21]20 C.F.R. 416.967(a) describes the physical exertion requirements of sedentary work as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (Doc. 9-2.)  Next, relying on the Grids, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform. The ALJ determined that Plaintiff did not have a substantial loss of ability to meet any of the basic mental work-related activities associated with unskilled work[22] and therefore the potential occupational base was not severely limited.  Thus, the ALJ ruled Plaintiff is not disabled.

## IV.  Discussion

Plaintiff alleges that his bipolar disorder and personality disorder are non-exertional impairments that significantly limit his ability to perform basic work activities and therefore the ALJ erred by solely relying on the Grids to determine that Plaintiff can perform work available in the national economy.  Plaintiff argues that as a matter of law, a vocational expert should have been called to testify at the hearing.  For the reasons discussed below, the Court finds that substantial evidence exists to support the ALJ's finding that Plaintiff did not suffer from a substantial loss of ability to perform basic mental work-related activities.  Accordingly, the ALJ did not err in utilizing the Grids in determining whether Plaintiff could perform work available in the national economy.

Although the Eleventh Circuit has held that use of the Grids to direct a conclusion of not disabled is improper where significant non-exertional limitations exist, it has also held that the Grids are applicable if the non-exertional limitations are not severe enough to prevent a wide range of gainful employment at the designated level.

---

[22]As defined in Social Security Ruling 85-15

*Syrock v. Heckler, 764 F. 2d 834, 836 (11th Cir. 1985); Walker v. Bowen, 826 F. 2d 996,*

*1002-03 (11th Cir. 1987); Welch v. Bowen, 854 F. 2d 436, 439 (11th Cir. 1988).  See*

*also Harris v. Astrue, 2008 U.S. Dist. LEXIS 117496 (M.D. Fla., Mar. 17, 2008)*

*(affirming ALJ's exclusive reliance on the Grids where claimant had moderate mental*

*impairments but ALJ did not find a substantial loss of ability to perform basic mental*

*work-related activities associated with unskilled work).*

Plaintiff focuses his appeal on the argument that due to his non-exertional

mental impairments, the ALJ was required to call a vocational expert to testify.  In

determining Plaintiff's RFC, the ALJ found that Plaintiff is able to, on a sustained basis,

"understand, carry out, and remember simple instructions; respond appropriately to

supervision, coworkers, and usual work situations; and deal with changes in a routine

work setting."  (Doc. 9-2.) The ALJ then made a specific finding that Plaintiff's non-

exertional limitations did not result in a substantial loss of ability to meet basic mental

work-related activities.  Pursuant to Soc. Sec. Ruling 85-15, the basic demands of

unskilled work are: "the abilities (on a sustained basis) to understand, carry out, and

remember simple instructions; to respond appropriately to supervision, coworkers, and

usual work situations; and to deal with changes in a routine work setting. A substantial

loss of ability to meet any of these basic work-related activities would severely limit the

potential occupational base." *Soc. Sec. Ruling 85-15.*

The ALJ's findings are supported by substantial evidence.  The medical evidence

as a whole suggests that Plaintiff suffers from only *moderate* impairments in

understanding, remembering and carrying out detailed instructions; concentration;

completing a normal workday and workweek; interacting appropriately with the general

public; and responding to changes in a work setting.  (R.307-35, 365-382). Gary

Buffone, Ph.D.; and Val Dee, Psy.D. each found in their respective mental capacity

assessments that Plaintiff had "moderate limitations" or "no significant limitations."

There is a complete absence of any findings by Drs. Buffone or Dee that described

Plaintiff's limitations as "markedly limited." Under the Commissioner's regulations, only

"marked" limitations are considered limitations that seriously interfere with the

claimant's ability to function independently, appropriately, effectively, and on a

sustained basis*. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00C*.

The mental status examination in Dr. Benet's June 22, 2007 psychological

evaluation - issued in conjunction with examination, evaluation and appropriate testing

– disclosed that Plaintiff's short term memory was above average, his intermediate

memory was good and his verbal reasoning was above average. Dr. Benet estimated

Plaintiff's general intellectual ability was high-average and his judgment was adequate.

Dr. Benet concluded that Plaintiff "should be able to perform work-related mental tasks

involving understanding and memory" although Plaintiff may be limited in his abilities at

times to perform tasks involving sustained concentration and persistence. R. 309-10.[23]

Moreover, despite these moderate impairments, Plaintiff has maintained a

variety of activities of daily living, including preparing some meals, doing laundry,

cleaning, using a computer, reading, watching television, going to the mall, going to the

---

[23] Although Plaintiff does not mention in his brief a January 2009 assessment from Dr. Benet, the ALJ properly discounted this assessment because it was provided to Dr. Benet by Plaintiff's counsel, filled-out by Dr. Benet one and a half years later without further testing or assessment and the assessment was inconsistent with Dr. Benet's own examination notes from June 2007.

movies, spending time with his girlfriend, playing the guitar, and participating in outdoor recreational activities. (Doc. 9-2, R.37, 307-10.) The ALJ appropriately accounted for Plaintiff's moderate mental limitations by finding that Plaintiff had the ability, on a sustained basis, to "understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (Doc. 9-2.)

Accordingly, this Court finds that substantial evidence exists to support the ALJ's reliance on the Grids. The ALJ properly concluded that Plaintiff can perform the full range of unskilled sedentary work and properly concluded that Plaintiff did not have any substantial loss of the ability to meet basic work-related mental activities that would severely limit the potential occupational base. Therefore, it was proper for the ALJ to use the Grids to determine whether Plaintiff could perform work available in the national economy, without calling a VE.

## V. CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida, this 5rd day of August, 2011.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**